**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT BECK,** on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TEKNI-PLEX, INC.,**<br><br>Defendant. | Case No.:<br><br>**COMPLAINT – CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Robert Beck ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Tekni-Plex, Inc. ("Tekni-Plex" or "Defendant"), and its and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. This class action arises from Defendant's failure to protect highly sensitive data.

2. Defendant is a "global leader in the Healthcare and Consumer Products markets" and manufactures and sells medical devices and materials for healthcare providers.[1]

3. As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") about its current and former employees. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

[1] *About Us,* Tekni-Plex, https://tekni-plex.com/en/about-us (last visited Oct. 1, 2025).

4. It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former employees' PII.

5. On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, Defendant's failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

6. Plaintiff is a Data Breach victim, having received a breach notice—attached as Exhibit A. He brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

7. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former employees' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

**PARTIES**

8. Plaintiff Robert Beck is a natural person and citizen of Wisconsin. He resides in Evansville, Wisconsin where he intends to remain.

9. Defendant Tekni-Plex, Inc., is a Delaware corporation with its principal place of business located at 460 E. Swedesford Road, Suite 3000, Wayne, PA 19087.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. And there are over 100 putative Class members.

11. This Court has personal jurisdiction over Defendant because it is headquartered in Pennsylvania, regularly conducts business in Pennsylvania, and has sufficient minimum contacts in Pennsylvania.

12. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claim occurred in this District.

## BACKGROUND

***Defendant Collected and Stored the PII of Plaintiff and the Class***

13. Defendant is a Defendant is a "global leader in the Healthcare and Consumer Products markets" and manufactures and sells medical devices and materials for healthcare providers.

14. As part of its business, Defendant receives and maintains the PII of thousands of its current and former employees.

15. In collecting and maintaining the PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII.

16. Under state and federal law, businesses like Defendant have duties to protect its current and former employees' PII and to notify them about breaches.

17. Defendant recognizes these duties, declaring in its "Privacy Policy" that:

18. Tekni-Plex "takes your privacy seriously and is committed to ensuring compliance with its legal obligations in this respect;"

19. "Tekni-Plex uses reasonable and appropriate measures to safeguard the information;" and

20. "Tekni-Plex will not sell, rent or otherwise provide any Personal Data to any other persons or third parties."[2]

***Defendant's Data Breach***

21. On or around October 25, 2024, Defendant was hacked in the Data Breach.[3]

22. Worryingly, Defendant already admitted that:

23. "On November 18, 2024, Tekni-Plex identified suspicious activity on its computer network."

24. "Tekni-Plex determined that an unauthorized actor accessed its network at various times between October 25, 2024 and December 7, 2024 and that certain files were accessed and/or copied without authorization."

25. "The information contained in the impacted data included employees' names and social security number." *See* Exhibit A.

26. Because of Defendant's Data Breach, at least the following types of PII were compromised: (i.) Names; and (ii) Social Security numbers.

27. Currently, the precise number of persons injured is unclear. But upon information and belief, the size of the putative class can be ascertained from information in Defendant's custody and control. Upon information and belief, the putative class is over one hundred members – as it includes its current and former employees.

28. Yet, Defendant waited over 10 months until September 24, 2025, before it began notifying the class. *See* Exhibit A.

---

[2] *Privacy Policy*, Tekni-Plex, https://tekni-plex.com/en/privacy-policy (last visited Oct. 1, 2025).

[3] *Data Breach Notification,* Maine Attorney Gen, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/eca02689-62c4-4a59-9e9f-242da5b5874f.html (last visited Oct. 1, 2025).

29. Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

30. When Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class "we encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity." *See* Exhibit A.

31. Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII. And thus, Defendant caused widespread injury and monetary damages.

32. Since the breach, Defendant that it has "assed the security of its network." *See* Exhibit A.

33. But this is too little too late. Simply put, these measures—which Defendant now recognizes as necessary—should have been implemented before the Data Breach.

34. On information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

35. Further, the Notice of Data Breach shows that Defendant cannot—or will not—determine the full scope of the Data Breach, as Defendant has been unable to determine precisely what information was stolen and when.

//

//

//

36. Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendant inflicted upon them.

37. Because of Defendant's Data Breach, the sensitive PII of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

38. On information and belief, the infamous cybercriminal group, "RansomHub" posted Defendant on its website as a breached entity on the dark web.[4] The RansomHub post contained Defendant's name and stated that it had stolen at least 424 GB of data from Defendant.[5]

39. The notorious RansomHub ransomware gang claimed responsibility for the cyberattack. RansomHub is becoming one of the most active ransomware actors, and Defendant knew or should have known of the tactics that groups like RansomHub employ.[6]

40. Disturbingly, the post also contains the statement "Full publication of all data (23.12.2024)". This indicates that the Sensitive Information stolen from Defendant would be published if a ransom payment was not made. Because this deadline has long passed, on information and belief, Plaintiff's and the Class's Sensitive Information has already been published and disseminated on the dark web.

---

[4] Ransomware Live, https://www.ransomware.live/id/dGVrbmktcGxleC5jb21AcmFuc29taHVi (last visited Oct. 2, 2025).

[5] *Id.*

[6] https://www.ransomware.live/group/ransomhub (last visited Oct. 2, 2025).




41. To date, Defendant has provided no public information on a ransom demand or payment.

42. However, even if a ransom payment was made, there is no guarantee that the data RansomHub stole will be deleted.[7] The stolen Sensitive Information is valuable, and can easily be sold to another threat actor, so there is little incentive to delete it.[8]

43. Ransomware groups can monetize stolen Sensitive Information and sell it on the dark web as part of a full identity profile.[9] Buyers can then use that information to conduct different

---

[7] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/#:~:text=While%20ransomware%20groups%20usually%20remove,little%20incentive%20to%20delete%20it.

[8] *Id.*

[9] Anthony M. Freed, *Which Data Do Ransomware Attackers Target for Double Extortion?*, MALICIOUSLIFE BY CYBEREASON, https://www.cybereason.com/blog/which-data-do-ransomware-attackers-target-for-double-extortion (last visited Mar. 6, 2025).

types of identity theft or fraud, such as filing a fake tax return, applying for a fraudulent mortgage or opening a bank account while impersonating the victim.[10]

44. Thus, on information and belief, Plaintiff's and the Class's stolen PII has already

45. been published—or will be published imminently—by CL0P on the Dark Web.

***Plaintiff's Experience and Injuries***

46. Plaintiff Robert Beck is a former employee of Defendant.

47. Thus, Defendant obtained and maintained Plaintiff's PII.

48. As a result, Plaintiff was injured by Defendant's Data Breach.

49. As a condition of his employment with Defendant, Plaintiff provided Defendant with his PII. Defendant used that PII to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that PII in order to obtain employment and payment for that employment.

50. Plaintiff provided his PII to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

51. Plaintiff reasonably understood that a portion of the funds derived from his employment would be used to pay for adequate cybersecurity and protection of PII.

52. Plaintiff received a Notice of Data Breach on September 29, 2025.

53. Thus, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

[10] *Id.*

54. Through its Data Breach, Defendant compromised Plaintiff's:

a. name; and

b. Social Security number.

55. Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. After all, Defendant directed Plaintiff to take those steps in its breach notice.

56. In the aftermath of the Data Breach, Plaintiff has suffered from a spike in spam and scam calls, including scam text messages from someone posing as one of his financial institutions.

57. Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

58. Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

59. Plaintiff suffered actual injury from the exposure and theft of his PII—which violates his rights to privacy.

60. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

61. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII right in the hands of criminals.

62. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

63. Today, Plaintiff has a continuing interest in ensuring that his PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

64. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, inter alia, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. loss of the opportunity to control how their PII is used;

b. diminution in value of their PII;

c. compromise and continuing publication of their PII;

d. out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, inter alia, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen PII; and

h. continued risk to their PII—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII.

65. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

66. The value of Plaintiff and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

67. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

68. One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

69. The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

70. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

71. Defendant disclosed the PII of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

72. Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

73. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years. In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[11]

74. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[12]

---

[11] *See* 2021 Data Breach Annual Report, IDENTITY THEFT RESOURCE CENTER (Jan. 2022), https://notified.idtheftcenter.org/s/.

[12] Ben Kochman, *FBI*, *Secret Service Warn of Targeted Ransomware* , LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targetedransomware.

75. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

76. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

77. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business. There, the FTC set guidelines for what data security principles and practices businesses must use.[13] The FTC declared that, inter alia, businesses must:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

78. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

79. Furthermore, the FTC explains that companies must:

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

---

[13] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protetingpersonal-information.pdf.

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

80. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

81. In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

82. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and antimalware software; encryption (making data unreadable without a key);multi-factor authentication; backup data; and limiting which employees can access sensitive data.

83. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

84. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

85. These frameworks are applicable and accepted industry standards. By failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

86. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach experienced by Tekni-Plex between October 25, 2024, and December 7, 2024, including all those individuals who received notice of the breach.

87. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

88. Plaintiff reserves the right to amend the class definition.

89. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

90. Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

91. Numerosity. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 2,232 members.

92. Typicality. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

93. Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class members' interests. Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

94. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant were negligent in maintaining, protecting, and securing PII;

d. if Defendant breached contract promises to safeguard Plaintiff and the Class's PII;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if Defendant's Breach Notice was reasonable;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

95. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

//

//

//

//

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

96. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

97. Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

98. Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

99. Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

100. Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' PII.

101. Defendant owed—to Plaintiff and Class members—at least the following duties to:

a. exercise reasonable care in handling and using the PII in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII.

102. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

103. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

104. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

105. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

106. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

107. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

108. Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

109. Defendant breached these duties as evidenced by the Data Breach.

110. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII by:

a. disclosing and providing access to this information to third parties; and

b. failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

111. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

112. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

113. Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

114. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

115. And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

116. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
**Negligence per se**
**(On Behalf of Plaintiff and the Class)**

117. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

118. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

119. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' sensitive PII.

120. Defendant breached its respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

121. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

122. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

123. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class members would not have been injured.

124. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

125. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence per se.

126. As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed supra).

//

//

//

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

127. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

128. Plaintiff and Class members were required to provide their PII to Defendant as a condition of receiving employment provided by Defendant. Plaintiff and Class members provided their PII to Defendant or its third-party agents in exchange for Defendant's employment.

129. Plaintiff and Class members reasonably understood that a portion of the funds derived from their employment with Defendant would be used to pay for adequate cybersecurity measures.

130. Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

131. Plaintiff and the Class members accepted Defendant's offers by disclosing their PII to Defendant or its third-party agents in exchange for employment.

132. In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

133. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's PII.

134. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

135. After all, Plaintiff and Class members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

136. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

137. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

138. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

139. Defendant materially breached the contracts it entered with Plaintiff and Class members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

140. In these and other ways, Defendant violated its duty of good faith and fair dealing.

141. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

142. On information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

143. Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

144. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

145. This claim is pleaded in the alternative to the breach of implied contract claim.

146. Plaintiff and Class members conferred a benefit upon Defendant. After all, Defendant benefitted from using their PII to facilitate employment.

147. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members.

148. Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

149. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII.

150. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures.

Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

151. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' employment because Defendant failed to adequately protect their PII.

152. Plaintiff and Class members have no adequate remedy at law.

153. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

**FIFTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

154. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

155. Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

156. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII.

157. Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

158. Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

159. Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

160. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**SIXTH CAUSE OF ACTION**
**Breach of Confidence**
**(On Behalf of Plaintiff and the Class)**

161. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

162. Plaintiff and Class members disclosed their highly sensitive PII to Defendant in confidence—with the implicit and explicit understanding that Defendant would collect, store, and protect their PII (and not allow the disclosure of their PII to unauthorized third parties).

163. As such, by obtaining (and continuing to maintain) Plaintiff's and Class members' PII, Defendant assumed an obligation to maintain the confidentiality of that PII.

164. At all times during the relationship between Defendant and Plaintiff and Class members, Defendant was fully aware of the highly confidential nature of Plaintiff's and Class members' PII.

165. Thus, Defendant intentionally, knowingly, and/or negligently committed the tort of breach of confidence by, inter alia:

a. failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII;

b. failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period; and

c. via the numerous instances of misconduct detailed *supra*.

166. As a direct and proximate result of Defendant's breach of confidence, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed supra).

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

167. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

168. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

169. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and still are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

170. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

171. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

172. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

173. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

174. Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

175. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

176. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

177. If a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages— while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

178. If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

179. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

**PRAYER FOR RELIEF**

Plaintiff and Class members respectfully request judgment against Defendant and that the Court enter an order:

a. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

b. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

c. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

d. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

e. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

f. Awarding attorneys' fees and costs, as allowed by law;

g. Awarding prejudgment and post-judgment interest, as provided by law;

h. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

i. Granting other relief that this Court finds appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Dated: October 3, 2025

Respectfully submitted,

*/s/ Andrew W. Ferich*

Andrew W. Ferich
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
One Magnificent
980 N. Michigan Avenue, Suite 1610

Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

**Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*

# EXHIBIT A

006567

TEKNIPLEX
Materials Science Solutions
P.O. Box 989728
West Sacramento, CA 95798-9728

30_006567

Robert Beck
[redacted]

Enrollment Code: D2LDWFANXJ
Enrollment Deadline: December 24, 2025
To Enroll, Scan the QR Code Below:

SCAN ME

Or Visit:
https://response.idx.us/TekniPlex

September 24, 2025

**NOTICE OF SECURITY INCIDENT**

Dear Robert Beck:

Tekni-Plex, Inc. ("TekniPlex") writes to provide you with information regarding the November 2024 security incident, as our ongoing review has revealed additional information that may impact the privacy of some of your information. As part of our investigation and review, we have confirmed that certain information related to you was contained within the impacted files. Although we are unaware of any identity theft or fraud occurring as a result of this event, we are providing you with this notice to inform you of the event, our response, and steps you may take to help protect your information, should you feel it appropriate to do so.

**What Happened?** On November 18, 2024, TekniPlex identified suspicious activity on our computer network. We then determined that an unauthorized actor accessed our network at various times between October 25, 2024, and December 7, 2024, and that certain files were accessed and/or copied by the actor without authorization. Upon determining this information, TekniPlex engaged in a comprehensive and time-intensive review of the involved data, with the assistance of third-party subject matter specialists, to assess the types of data impacted, and for whom. This was a particularly complex and time-intensive process given the significant effort that was needed to obtain the appropriate files for review. TekniPlex is notifying you because the investigation determined that certain information related to you was contained within the impacted files.

**What Information Was Involved?** The information contained in the impacted data included your name and the following information: Social Security number. At this time, we have no evidence that your information was used to commit identify theft or fraud as a result of this event.

**What We Are Doing.** TekniPlex takes the confidentiality, privacy, and security of information in our care very seriously. Upon learning of the event, we moved quickly to investigate and respond, assess the security of our network, and notify affected individuals. As an added precaution, we are also offering you access to 12 months of complimentary credit monitoring and identity protection services through IDX at no cost to you. A description of the services and instructions on how to enroll can be found within the enclosed *Steps You Can Take to Protect Personal Information*. We encourage you to enroll in those services, but please note that you must complete the enrollment process yourself as we are not permitted to enroll you in these services.

**What You Can Do.** We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors over the next 12 to 24 months. You can review the enclosed *Steps You Can Take to Protect Personal Information* to learn helpful tips on steps you can take to protect against possible information misuse, should you feel it appropriate to do so. We also encourage you to enroll in the complimentary credit monitoring services we are offering to you.